**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES RICHARD COOPER,

      Petitioner,

v.                                                    Case No: 8:12-cv-1947-CEH-TBM

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

**ORDER**

      Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1).  The Court has considered the petition and Respondent's response (Dkt. #10).  Upon review, the Court determines that the petition is without merit and should therefore be denied.

**BACKGROUND**

      On February 6, 2008, a jury found Petitioner James Richard Cooper ("Cooper") guilty of two counts of lewd molestation and four counts of sexual battery with a child in familial custody. On March 20, 2009, the trial court sentenced Cooper to an overall sentence of 120 years in prison followed by 30 years of sex offender probation. Cooper raised three claims on direct appeal, asserting that the trial court erred by:

(1) allowing the prosecutor to introduce evidence of numerous other collateral uncharged sex acts which only served as propensity evidence;

(2) refusing to allow defense counsel to voir dire Detective Bymer, the officer who testified as to Cooper's pre-interview and interview statements, before Cooper's confession was played to the jury; and

(3) denying Cooper's motion for judgment of acquittal on Count Six, which charged Cooper with sexual battery by "penetrating or uniting" his penis with the victim's anus because the prosecution failed to prove union or penetration.

On June 10, 2009, the Florida Second District Court of Appeal affirmed Cooper's convictions and sentences. With respect to the first issue, the court found that although the trial court erred by admitting evidence of collateral acts of sexual battery, the error was harmless beyond a reasonable doubt. *See Cooper v. Florida*, 13 So. 3d 147 (Fla. 2d DCA 2009). The state appellate court rejected the second and third claims without comment. *See id.*

Cooper sought discretionary review from the Supreme Court of Florida on the first issue, arguing that the state appellate court misapplied the "harmless error" test. The state supreme court accepted jurisdiction and ultimately held that the appellate court misapplied the test, and it remanded the case to the appellate court for reconsideration. On remand, the state appellate court took into account the Supreme Court of Florida's opinion and again affirmed Cooper's convictions and sentences, concluding that any trial court error in admitting the evidence of other acts of sexual battery was harmless beyond a reasonable

doubt. *See Cooper v. State*, 68 So. 3d 263 (Fla. 2d DCA 2010). The mandate issued on February 10, 2011.

Once again, Cooper sought discretionary review in the state supreme court. On June 27, 2011, the Supreme Court of Florida rejected jurisdiction. Cooper did not file any petitions for collateral relief in state court.

Cooper timely filed his 28 U.S.C. § 2254 petition for habeas relief (Dkt. #1), framing his three claims in the following manner:

(1) whether the state-court decision concerning Issue I on direct appeal is contrary to or an objectively unreasonable application of clearly established federal law;

(2) Issue II on direct appeal; and

(3) Issue III on direct appeal.

In his petition, Cooper cites no facts in support of these claims. Instead, he directs the Court's attention to the attached copy of his initial brief on direct appeal in state court.

## GUIDING PRINCIPLES

### I. Federal Question

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may entertain a petition for writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (superseded by statute on other grounds). Rather, "[f]ederal courts may intervene in the state judicial process only to

correct wrongs of a constitutional dimension." *Velazquez v. Sec'y, Dep't of Corr.*, No. 8:10-cv-2253-T-33EAJ, 2011 WL 3794693, at *1 (M.D. Fla. Aug. 26, 2011) (citing *Wainwright v. Goode*, 464 U.S. 78 (1983)). "Even when a petition which actually involves state law issues is 'couched in terms of equal protection and due process,' this limitation on federal habeas corpus review is of equal force." *Id.* (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)).

## II. Pleading Requirements

"A discrete set of Rules governs habeas proceedings launched by state prisoners." *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing Rules Governing § 2254 Cases in the United States District Courts (hereinafter § 2254 Rules)). "Under these rules, 'habeas corpus petitioners must meet heightened pleading requirements.'" *Benjamin v. Sec'y for Dep't of Corr.*, 151 F. App'x 869, 872 (11th Cir. 2005) (internal quotation marks and citation omitted). A petition for habeas corpus relief must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Section 2254 Rules, Rule 2(c), 28 U.S.C. App. (2010 Ed.). A "notice pleading" is not sufficient; the petition must assert facts that point to a real possibility of constitutional error. *Mayle*, 545 U.S. at 655 (citing Advisory Committee's Note on Rule 2(c) of the § 2254 Rules).

## III. Exhaustion of Remedies

"A petitioner cannot bring a federal habeas claim without first exhausting state remedies." *Holland v. Florida*, 560 U.S. 631, 648 (2010); *see also* 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a

habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(c). Section 2254(c) requires that "state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan*, 526 U.S. at 843. Because state courts are obliged to enforce federal law, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* at 844. "In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a [Florida Rule of Criminal Procedure] Rule 3.850 motion, and an appeal from its denial." *Williams v. McNeil*, No. 08-80831-Civ., 2010 WL 2634403, at *4 (S.D. Fla. June 9, 2010).

### IV. AEDPA Bar to Relitigation

Where a state court has already adjudicated the issues raised in the petition on the merits, § 2254(d) bars relitigation, subject only to the exceptions in § 2254(d)(1) and (d)(2). *Harrington v. Richter*, 562 U.S. 86, 98 (2011). A federal court may only grant relief if (1) the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Section 2254(d). *See Richter*, 562 U.S. at 98. "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted).

## DISCUSSION

At the outset, the Court notes that Cooper's petition fails to comply with the pleading requirements set forth in Rule 2(c) of the § 2254 Rules. In his first ground for relief, Cooper makes the bare assertion that the state court's decision on Issue I of his direct appeal is contrary to or is an unreasonable application of clearly applicable federal law. In his next two grounds for relief, Cooper asks the Court to review Issues II and III, respectively, of his direct appeal. On all three claims, Cooper directs the Court to review his attached appellate brief. But general references to briefs on appeal, without more, patently fail to comply with Rule 2(c). *Williams v. Alabama*, No. 1:07–cv–1276–KOB–TMP, 2012 WL 1339905, at *13 (N.D. Ala. April 12, 2012); *see also Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990). Additionally, Cooper makes no argument as to how his constitutional rights were violated. *See Grant v. Georgia*, 358 F.2d 742 (5th Cir. 1966) (per curiam) ("The application fails to allege any facts upon which the trial court could find a deprivation of a constitutional right, or any other basis for collateral attack. Mere conclusionary allegations will not suffice." (internal citation omitted)).

When a § 2254 petition is facially insufficient, the district court may exercise its discretion to dismiss the petition without prejudice. *See Benjamin*, 151 F. App'x at 872-873; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."). However, because the government has already filed its response to Cooper's petition, the Court will construe each of the issues raised in Cooper's appellate brief as a properly pleaded § 2254 claim.

Also as a preliminary matter, upon examining the record, the Court concludes that Cooper's petition is a "mixed petition" in which some claims are exhausted and some claims are unexhausted. Ordinarily, "[a] mixed petition . . . should be dismissed without prejudice to allow the petitioner to either exhaust state remedies, bring a new petition presenting only the exhausted claims, or amend the petition to remove any unexhausted claims." *Isaac v. Augusta SMP Warden*, 470 F. App'x 816, 818 (11th Cir. 2012). But as the Court explains herein, Cooper's unexhausted claim is barred from further review in state court. Therefore, the Court declines to dismiss Cooper's petition without prejudice and will address his claims on the merits. *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (explaining that when it is obvious that the unexhausted claim would be barred from review in state court, the district court should forego the needless "judicial ping-pong" and conclude that the claim provides no basis for federal habeas relief).

## I. Ground One (Issue I on Direct Appeal)

Cooper alleges that the trial court erred by allowing the prosecutor to introduce evidence of numerous collateral, uncharged sex acts. He alleges that the victim in the case, R.L.C., was permitted to testify that the incidents with Cooper, his father, happened "maybe once a week, maybe every two weeks" and estimated that was a total of 25 incidents (although there were only 6 counts charged). Cooper maintains that his due process right to a fair trial on the charges contained in the information was violated through the introduction of this testimony, particularly because the information did not put him on notice that he would be tried for numerous incidents of each individual sex act charged. Under Florida law, Cooper argues, the prosecution was required to either file the

information such that it adequately informed Cooper of the charges he faced or file a notice under § 90.404(2)(c)(1) of the Florida Statutes informing Cooper that it would be introducing evidence of additional sex acts.

## A.  Exhaustion of Remedies

In its response, the government urges the Court to find that Cooper failed to exhaust his state remedies on this claim. Indeed, when Cooper raised this claim on direct appeal, he did not substantively allege any *federal* constitutional error and he is therefore precluded from making that argument now. The Supreme Court has noted that a petitioner who seeks to raise a federal issue in state court can do so "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Though Cooper alleged that his due process rights were violated, he did not specify whether he was raising this claim under the state or the federal constitution.

The Eleventh Circuit commented on *Baldwin*, stating that "[i]f read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). Indeed, construed liberally, *Baldwin* might give rise to the conclusion that Cooper's bare assertion of a "due process" violation – without specifying whether he was relying on the state or the federal constitution – constitutes a sufficient exhaustion of state remedies. But in *McNair*, the Eleventh Circuit cautioned that "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *Id.* (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004)). With

these principles in mind, the Court considers the arguments Cooper put forth on this claim in state court.

In his appellate brief, Cooper relied exclusively on state law. Similarly, when Cooper first petitioned the Supreme Court of Florida for discretionary review, his initial brief and reply brief were completely devoid of any citations to federal law. After the state appellate court affirmed Cooper's convictions and sentences on remand, he again petitioned the state supreme court for discretionary review and cited exclusively Florida state law in his brief. At no point in any of these proceedings did Cooper argue that his federal due process right was violated through the introduction of the evidence. Thus, his bare reference to "due process" in the instant proceedings is exactly the type of needle in the haystack the Eleventh Circuit has held insufficient to satisfy the exhaustion requirement. *See id.* at 1303-04 (finding that petitioner had failed to exhaust his state remedies because although he alleged in his state habeas proceedings that his Sixth Amendment federal constitutional right to a fair trial was violated, his arguments on appeal and in his petition for certiorari were all premised on state law, with negligible references to federal law). Cooper did not sufficiently exhaust his state remedies on this issue.[1]

---

[1]     The Court recognizes that where a petitioner raises both exhausted and unexhausted claims in a single habeas petition, the petitioner is typically permitted an opportunity to cure the infirmity. *See Isaac*, 470 F. App'x at 818; *Snowden*, 135 F.3d at 736. But such an exercise would be frivolous here because there is no other state-court remedy available to Cooper. Florida Rule of Criminal Procedure 3.850, the state's equivalent of a habeas petition, provides a narrow avenue for relief to defendants whose judgments and sentences have become final. However, because the instant claim contemplates an evidentiary issue more suited for appellate review, it would not be cognizable under Rule 3.850. *See Bruno v. Florida*, 807 So. 2d 55, 63 (articulating that a claim of trial court error cannot be raised in a 3.850 motion). Thus, there is no potential state court remedy for Cooper to pursue, and the Court will not halt its review of the instant petition on this basis. *See Rhines v. Weber*, 544 U.S. 269, 277 ("[T]he district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

*B.  Entitlement to Relief*

Even if Cooper had successfully exhausted his state remedies on this claim, he would not be entitled to relief on Ground One. "[G]enerally, federal courts are not empowered to correct erroneous evidence rulings of state trial courts." *Snowden*, 135 F.3d at 737 (internal quotation marks omitted). Relief is *only* warranted where a state court's evidentiary rulings constitute a fundamental denial of the petitioner's federal due process right. *Id.* As the state appellate court accurately noted,

> [t]he victim clearly testified that he and Cooper had engaged in at least one act of each type charged by the State during the period of time covered by the information. More important, the State introduced Cooper's taped statement, in which he specifically admitted to engaging in at least one act of each type charged by the State with the victim. While there were some discrepancies between the victim's testimony and Cooper's statement, those discrepancies went to issues such as the time the acts had started and who initiated the contact—not to whether the acts had occurred at all. And while Cooper did introduce evidence to show that the victim had once denied that any sexual acts had occurred to an investigator from the Department of Children and Family Services, this evidence conflicted with Cooper's own taped admission. Therefore, the admissible evidence against Cooper was extremely strong.

*Cooper*, 68 So. 3d at 266.

A review of the record supports the state appellate court's legal conclusion that the admissible evidence against Cooper was extremely strong. Though evidence of additional sexual acts may have been admitted in error, there was overwhelming evidence pertaining specifically to the acts charged. The admission of R.L.C.'s testimony as to the number of times Cooper committed the sexual acts did not fundamentally impede Cooper's federal due process rights, and there is no basis upon which this Court could grant habeas relief. *See Snowden*, 135 F.3d at 737.

In sum, in addition to having failed to exhaust his state remedies, Cooper failed to establish that his federal due process rights were fundamentally violated through the introduction of evidence of additional sexual acts. Ground One will be denied.

## II. Ground II (Issue II on Direct Appeal)

In his next ground for relief, Cooper asserts that the trial court erred by refusing to allow defense counsel to voir dire Detective Bymer on the issue of the voluntariness of Cooper's statements before Cooper's statements were presented to the jury. At trial, defense counsel objected and requested to voir dire the detective before he testified about an unrecorded pre-interview he conducted with Cooper. The judge denied the request, but required the prosecution to lay a predicate. Defense counsel raised the same objection before Cooper's taped statement was played, and the judge told counsel that he could cross-examine the witness. Cooper contends that the judge was required to allow counsel to voir dire the witness on the issue of voluntariness *before* the statement was admitted. Further, he argues that requiring the prosecutor to lay a predicate or telling defense counsel he could cross-examine the detective "are not substitutes for the due process right guaranteed [by the] 5th and 14th Amendments to the United States Constitution."

### A.  Exhaustion of Remedies

When Cooper raised this claim in state court, unlike in Ground One, he specifically alleged an entitlement to relief under federal law (he argued that his federal constitutional rights under the Fifth and Fourteenth Amendments had been violated). Further, in his appellate brief, Cooper cited to *Jackson v. Denno*, 378 U.S. 368 (1964) in support of his claim that a judge is required to make a finding that a confession or statement is voluntary

before submitting the confession for consideration to the jury. Though the remainder of the cases cited by Cooper are Florida state cases, the vast majority of them rely, at least in part, on federal due process concerns. *See McDonnell v. Florida*, 336 So. 2d 553 (Fla. 1976); *Land v. Florida*, 293 So. 2d 704 (Fla. 1974); *Graham v. Florida*, 91 So. 2d 662 (Fla. 1956); *Bates v. Florida*, 84 So. 373 (Fla. 1919); *Dillow v. Florida*, 884 So. 2d 508 (Fla. 2d DCA 2004); *Dodd v. Florida*, 232 So. 2d 235 (Fla. 4th DCA 1970); *Williams v. State*, 188 So. 2d 320 (Fla. 2d DCA 1966).

Because when he raised the instant claim in state court Cooper made an explicit reference to the federal law that forms the basis of his claim, and because the argument he set forth was clearly premised in principles of federal law, the Court concludes that he successfully exhausted his state remedies on Ground Two. *C.f. McNair*, 416 F.3d at 1302-03.

The government makes the unavailing argument that Cooper did not exhaust his remedies because he did not raise the alleged constitutional violation in a Rule 3.850 motion. If Cooper had raised this issue in a state postconviction motion, his claim would have been summarily denied. "Matters which were raised on appeal and decided adversely to the movant are not cognizable by motion under Rule 3.850." *McCrae v. Florida*, 437 So. 2d 1388 (Fla. 1983); *see also Florida v. Coney*, 845 So. 2d 120, 137 (Fla. 2003) (asserting that claims of trial court error cannot be raised in a Rule 3.850 motion). It would be imprudent for the Court to conclude that Cooper failed to exhaust his state remedies because he did not raise the instant issue in a state habeas petition where it is abundantly clear, under state law, the claim would have been barred from review.

*B.  Bar to Relitigation*

When Cooper raised this claim on direct appeal, the appellate court affirmed it without comment. *See Cooper*, 13 So. 3d at 148. This affirmance constitutes an adjudication on the merits for purposes of the AEDPA's bar to relitigation. *See Richter*, 562 U.S. at 98-99 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an explanation from the state court explaining the state court's reasoning."). Accordingly, the Court will evaluate Cooper's claim on its merits to the extent § 2254(d) allows.

Cooper challenges the state court's evidentiary ruling that evidence of his confession was admissible without first allowing defense counsel to inquire into the issue of voluntariness. Again, a federal court may only disturb a state court's evidentiary ruling if it resulted in a *fundamental* due process violation. *See Snowden*, 135 F.3d at 737.

To the extent Cooper contends that a judge should make a finding that a confession is voluntary before permitting the jury to consider it, he is correct. *See Jackson v. Denno*, 378 U.S. 368, 376-77 ("Equally clear is the defendant's constitutional right *at some stage in the proceedings* to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." (emphasis added)). But a defendant who does not file a pre-trial motion to suppress his confession waives his argument challenging the voluntariness of his confession. *U.S. v. Pou*, 207 F. App'x. 959, 960 (11th Cir. 2006) (per curiam). Thus, if a defendant raises the issue of voluntariness for the first time at trial, the court is not required to hold a hearing on the issue. *Id.* at 959-60.

As the government emphasizes in its response, in the two-year span between the filing of the information and trial, Cooper did not move to suppress his confession on *any* ground, including voluntariness. Thus, when defense counsel objected to the admission of evidence regarding Cooper's pre-interview statements and his recorded interview at trial, he was not entitled to voir dire the detective on the issue of voluntariness. *See id.* Contrary to Cooper's assertion, directing the prosecutor to lay a predicate and allowing defense counsel to cross-examine the witness was sufficient, in this instance, to protect Cooper's due process rights at trial. *See id.* The Court concludes that the trial court's actions were a reasonable application of federal law, and do not form a basis for habeas corpus relief. *See* § 2254(d)(1).

Additionally, though the trial court did not permit defense counsel to voir dire the witness, it still had the opportunity to consider all the evidence offered by both parties on the issue of voluntariness before submitting the case to the jury: the prosecutor laid a predicate before he examined Detective Bymer about the confession, and defense counsel proceeded to cross-examine the detective. This approach constitutes a reasonable resolution of *Jackson* and *Pou*. Though, under *Pou*, Cooper had waived his right to a full-fledged *Jackson* hearing as to the admissibility of the evidence, the court reasonably accommodated defense counsel's objection by requiring the prosecution to lay a predicate on the issue of voluntariness before the confession was admitted into evidence

Further, the trial court's decision to admit the confession was not an unreasonable determination in light of the evidence presented on the issue of voluntariness, and therefore, it does not amount to a fundamental deprivation of due process. "[A] defendant in a

criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." *Jackson*, 378 U.S. at 376. "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Leon v. Wainwright*, 734 F.2d 770, 772 (11th Cir. 1984) (internal quotation marks omitted). "This means that it 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *Id.* (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)).

This Court's independent review of the record leads it to the unwavering conclusion that Cooper's confession was voluntarily made. Detective Bymer testified on direct examination that before Cooper's pre-interview, neither Detective Bymer nor the other detective present threatened Cooper, made him any promises, handcuffed him, showed Cooper his weapon, or told him that he was not free to go (Appendix A, Exhibit 9, pp. 254-55, 257). Detective Bymer also testified that before taping Cooper's recorded confession, he notified Cooper that he would be recording the conversation (Appendix A, Exhibit 9, pp. 256-57). Detective Bymer conducted both the interview and the pre-interview under the trees outside of Cooper's house (Appendix A, Exhibit 9, p. 255). In his recorded interview, Cooper confirmed that he was giving the statement of his own free will and that the detectives had not coerced him in any way. (Appendix A, Exhibit 9, pp. 261-62, 272-73).

At no point on cross-examination did defense counsel forthrightly challenge the voluntariness of Cooper's confession. Rather, his line of questions spoke more to the

*weight* the confession should be given based on voluntariness. Specifically, defense counsel asked what Detective Bymer and his partner were wearing at the time of the interview, whether they told Cooper he was free to leave or not, and whether the officers read Cooper his *Miranda*[2] warnings (Appendix A, Exhibit 9, pp. 288-293). No evidence was introduced during either the direct examination or cross examination of Detective Bymer that Cooper's statements were involuntarily made.

The totality of the circumstances surrounding Cooper's confession establish that he gave the confession of his own free will and was not coerced, threatened, or pressured to admit to his actions in any way. It was thus reasonable for the trial court to conclude that the confession could properly be submitted to the jury for consideration. This Court's finding of voluntariness also supports its conclusion that Cooper was not fundamentally deprived due process because, regardless of when defense counsel got the opportunity to question Detective Bymer, the evidence would have been submitted to the jury for consideration. Moreover, the trial judge properly instructed the jury to weigh the confession to determine whether it was freely and voluntarily given, and to disregard it if they concluded that it was not. *See Jackson*, 378 U.S. at 377 ("But if the evidence presents a fair question as to [the confession's] voluntariness . . . the judge must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character.").

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Based on the foregoing, the Court concludes that Cooper was not fundamentally deprived of his Fifth Amendment due process right when the trial court denied defense counsel's request to voir dire Detective Bymer on the issue of voluntariness. Accordingly, Ground Two should be denied.

### III. Ground III (Issue III on Direct Appeal)

As his final ground for relief, Cooper alleges that the trial court erred in denying his motion for judgment of acquittal on Count Six because the prosecution failed to prove union or penetration of the victim's anus. Count Six of the information charged Cooper with committing a sexual battery on R.L.C. "by penetrating or uniting the sexual organ of [Cooper] with the anus of R.L.C.," in violation of § 794.011 of the Florida Statutes.

At trial, defense counsel moved for a judgment of acquittal on Count Six. Counsel argued that the testimony did not establish that there was actual, direct contact between Cooper's penis and R.L.C.'s anus. Therefore, the State had failed to present a prima facie case. The trial court denied counsel's motion.

Cooper now argues that the trial court erred because the prosecution did not introduce evidence, even when viewed in the light most favorable to the state, that established union or penetration beyond a reasonable doubt. He concedes that there was testimony that Cooper tried to put his penis into R.L.C.'s "butt," but he was unable to do so because R.L.C. would "tighten up." This indicates, Cooper posits, that he touched skin and not the anus. And he contends that "[t]ouching the buttocks or other skin around the anus is insufficient to prove the offense charged."

### A. Exhaustion of Remedies

When Cooper raised this issue on direct appeal, he made no direct reference to a violation of his federal constitutional rights. However, "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). Construing Cooper's allegations in Ground III in this light, the Court concludes that Cooper exhausted his state remedies.

The government again argues that this claim is unexhausted because Cooper could have, but did not, raise this issue in a Rule 3.850 motion. However, whether Ground III is construed as a claim of trial court error or a challenge to the sufficiency of the evidence, it would have been summarily denied in a Rule 3.850 motion and is therefore inappropriate to consider when evaluating whether Cooper exhausted the instant claim. *See Bruno*, 807 So. 2d at 63; *Childers v. Florida*, 782 So. 2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850.").

### B. Bar to Relitigation

As with Issue II, when Cooper raised this issue on direct appeal, the appellate court affirmed without further comment. *See Cooper*, 13 So. 3d at 148. For purposes of the AEDPA's bar to relitigation, the ruling constitutes an adjudication on the merits and is entitled to this Court's deference. *See Richter*, 562 U.S. at 98-99.

1. Adequate and Independent State Grounds Doctrine

"A federal habeas court will not review a claim rejected by a state court 'if the judgment of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009). "The state-law ground may be a substantive rule dispositive of the case." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011); *see also Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts.").

Though the appellate court did not comment on the reason for its affirmance, the issue presented in Ground III is a state-law issue. Under Florida law, a judgment of conviction comes to the appellate court with a presumption of correctness and a defendant's claim of insufficiency of the evidence can only prevail in the absence of substantial, competent evidence to support the verdict and judgment. *Terry v. Florida*, 668 So. 2d 954, 964 (Fla. 1996). Because this constitutes an independent and adequate state-law ground upon which the appellate court could have based its affirmance, there is no basis for this Court to disturb the state court's ruling. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state law questions."); *see also Jackson*, 443 U.S. at 321 (asserting that a sufficiency of the evidence claim is not cognizable in a habeas corpus proceeding if an independent and adequate state ground acts as a bar).

2. Substantial and Competent Evidence

Even if Cooper's claim were not procedurally barred, he would not be entitled to habeas corpus relief on Ground III. "The standard for review for the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in the light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty beyond a reasonable doubt." *Williams*, 2010 WL 2634403, at *6 (citing *Jackson*, 443 U.S. 307 and *Smith v. White*, 815 F.2d 1401 (11th Cir. 1987)). This standard "gives full play to the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Notably, "[t]he simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Id.* (citing *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987). "It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Id.* (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)).

Here, Cooper argues that the evidence was insufficient to support a conclusion that a union or penetration occurred between his penis and R.L.C.'s anus. Under the relevant statute, "union" and "penetration" are distinct concepts. *See* Fla. Stat. § 794.011. "Union permits a conviction based on contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight." *Behl v. Florida*, 898 So. 2d 217, 222 (Fla. 2d DCA 2005) (quotation marks and citation omitted). Construing the evidence presented at trial in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have determined beyond a reasonable doubt that Cooper committed the act of "union" with R.L.C.'s anus. Most notably, R.L.C.

testified that his penis went into his father's "butt," but R.L.C. would not let Cooper's penis penetrate R.L.C. by "tighten[ing] up" (Appendix A, Exhibit 9, pp. 224). Based on R.L.C.'s testimony, the jury could reasonably infer that Cooper made contact or union with R.L.C.'s anus.

To conclude, in addition to being procedurally barred, Cooper's claim fails on its merits. There is no basis for habeas corpus relief. Ground III should be denied.

## CONCLUSION

For the reasons set forth above, all of Petitioner's claims are without merit, and will be denied. Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

It is therefore ORDERED AND ADJUDGED that:

1.      The Petition for Writ of Habeas Corpus (Dkt. #1) is **DENIED**.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. *Id*. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Petitioner "must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

DONE AND ORDERED this 18th day of May, 2015, at Tampa, Florida.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel/Parties of Record